STATE of Wisconsin, Plaintiff-Respondent,

v.

Alan Adin RANDALL, Defendant-Appellant.†

Court of Appeals

*No. 97–0519–CR. Submitted on briefs April 7, 1998.—Decided September 17, 1998.*

(Also reported in 586 N.W.2d 318.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Eich, Vergeront and Roggensack, JJ.

ROGGENSACK, J. Alan Randall appeals a judgment recommitting him to the custody of the Wisconsin Department of Health and Social Services at the Winnebago Mental Health Institute (WMHI) following his confinement there as an insanity acquittee.[1] He claims: (1) that the circuit court erroneously exercised its discretion when it refused to instruct the jury that the State was required to prove a level of dangerousness that could not be managed safely in the community; (2) that the evidence adduced at trial was

---

[1] This term is used to designate a person who has been found not guilty by reason of mental disease or defect for a criminal act.

55

insufficient to establish he is currently dangerous; and (3) that he was denied due process of law because the jury was not asked to decide whether his continued confinement was medically justified. We conclude that the jury instructions properly stated the law applicable to Randall, that the evidence at trial was sufficient to meet the requisite legal standard, and that the use of the dangerousness standard comported with Randall's due process rights. Therefore, we affirm the judgment of the circuit court.

## BACKGROUND

In 1974–75, while a minor, Randall committed a series of burglaries and armed car thefts. He eventually shot and killed the owner of one of the cars he stole and two police officers, whose squad car he then used to commit another burglary. As a result, Randall was charged with three counts of first-degree murder, seven counts of burglary, and two counts of operating a motor vehicle without the owner's consent.

Randall pleaded not guilty to four of the robbery counts and not guilty by reason of mental disease or defect to the remaining counts, and a bifurcated jury trial was held. In the first phase of the trial, the jury found Randall guilty of two counts of first-degree murder, four counts of burglary, and one count of operating a motor vehicle without the owner's consent. In the second phase, the State stipulated that, under § 971.15, STATS., Randall was not responsible for the homicides, one count of burglary, and operating a vehicle without the owner's consent, because he was suffering from paranoid schizophrenia at the time of the crimes. The circuit court accepted the stipulation and committed Randall to the Central State Hospital for care, custody and treatment. The court also sen-

tenced Randall to time served on one of the burglary counts, and concurrent ten-year prison terms on the others, which were stayed subject to ten-year terms of probation, which were also stayed until his release from commitment. Randall was then transferred to WMHI.

Over the following years, Randall participated in and successfully completed the treatment programs available to him at WMHI. At the time relevant to his appeal, he had the lowest security level classification at WMHI and he had earned a number of off-grounds privileges, including signing out to attend college classes[2] and working forty hours a week at a local business. He also worked unescorted on the open WMHI grounds, and never left without permission.

On January 11, 1990, Randall petitioned for a reexamination of his mental condition pursuant to § 971.17(2), STATS., 1987–88,[3] which provides:

> If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department.

[2] The governor suspended such unsupervised privileges for all inmates in 1989.

[3] Because Randall was adjudicated not guilty by reason of mental disease for offenses committed prior to January 1, 1991, this is the controlling statutory provision. Section 971.17(8), STATS.

On May 25, 1990, a six-person jury found that Randall should be recommitted to the custody of the department at an appropriate institution.

On June 7, 1991, Randall filed a petition for re-examination and conditional release. The circuit court ordered the original court-appointed psychiatrists to re-examine Randall and file updated reports. The matter was initially scheduled for trial on June 22, 1992. On May 18, 1992, the United States Supreme Court decided *Foucha v. Louisiana*, 504 U.S. 71 (1992). Thereafter, Randall filed a motion for immediate release based on his view that § 971.17(2), STATS., 1987–88, was unconstitutional under *Foucha*. The circuit court denied Randall's motion and the Wisconsin Supreme Court determined, on an appeal of that decision of the circuit court, that Wisconsin's statutory scheme was constitutional and distinguishable from that of Louisiana, which was examined in *Foucha*.[4] The supreme court remanded for further proceedings.

In November of 1995, Randall requested another re-examination in light of the standard established in *Randall I*, which explained that he should be treated in a manner consistent with his commitment. The same doctors who had examined him earlier concluded that he was not mentally ill and could be released on specified conditions.

The matter proceeded to trial. The State presented evidence about the brutality of Randall's initial crimes.[5] It presented evidence that in 1994, while at WMHI, Randall hid a phone book, empty plastic jars,

---

[4] The holding in *State v. Randall*, 192 Wis. 2d 800, 532 N.W.2d 94 (1995) (*Randall I*), is central to this decision and will be discussed in depth later in the opinion.

[5] The State conceded in its opening argument that the jury would hear no evidence that Randall was still manifesting signs

old magazines, junk mail addressed to him, firecrackers and tent poles above the ceiling tiles in the institution's bicycle shop, where he worked and that Randall denied some of the articles were his. Secreting objects for no apparent reason is conduct repetitive of similar acts that occurred prior to his arrest, when he hid a CPR dummy above the ceiling tiles of a local high school he burglarized. There was also testimony that an April 21, 1995 progress note said Randall had shown increased anger and that his anger increased further when he was questioned about it. Randall presented evidence that the WMHI staff had discontinued program services in 1992, after concluding that he was stable.

Randall requested jury instructions which would require the jury to find that he could not be safely released into the community under any conditions, and that the State was required to prove a medical justification for his continued confinement. The circuit court refused to give either instruction. The jury found that Randall was still dangerous and the court recommitted him.

## DISCUSSION

**Standard of Review.**

Our review of a request for a jury instruction is limited to whether the trial court acted within its discretion when it refused to give the requested instruction. *State v. Wilson*, 180 Wis. 2d 414, 420, 509 N.W.2d 128, 130 (Ct. App. 1993). We will reverse and

---

of mental illness, and it based its entire case solely on evidence of his continued dangerousness.

order a new trial only if the instructions, taken as a whole, communicated an incorrect statement of the law or otherwise probably misled the jury. *Miller v. Kim*, 191 Wis. 2d 187, 194, 528 N.W.2d 72, 75 (Ct. App. 1995).

We review the evidence supporting a jury verdict finding dangerousness in the light most favorable to the verdict, and we will affirm, if there is any credible evidence, or reasonable inference therefrom, upon which the jury could have based its decision. *State v. Gladney*, 120 Wis. 2d 486, 490, 355 N.W.2d 547, 549 (Ct. App. 1984). However, we consider *de novo* whether the constitutional principles of due process have been violated. *See State v. Garcia*, 192 Wis. 2d 845, 864–65, 532 N.W.2d 111, 118 (1995).

**Jury Instruction on Dangerousness.**

In *State v. Randall*, 192 Wis. 2d 800, 532 N.W.2d 94 (1995) (*Randall I*), the supreme court implied that the dangerousness factors set forth in § 971.17(4)(d), STATS., 1993–94, which apply to persons adjudicated not guilty by reasons of mental disease or defect for offenses committed after January 1, 1991, may be useful in evaluating Randall's dangerousness, on remand. *Randall I*, 192 Wis. 2d at 838, 532 N.W.2d at 109. Section 971.17(4)(d), 1993–94, provides in relevant part:

> The court shall grant the petition unless it finds by clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released. In making this

determination, the court may consider, without limitation because of enumeration, the nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

Based on the supreme court's statements, Randall asked the circuit court to instruct the jury:

The burden of proving that Alan Randall cannot be safely released to the community on conditions to be set by this Court is on the State.

That burden of proof does not require the State to prove just some minimal or insubstantial present danger, but requires proof of a level of present danger which cannot be managed safely in the community under any set of reasonable conditions which this Court might impose.

If the evidence which you have heard clearly convinces you that there are no conditions under which Alan Randall can live safely in the community, then you should find that he should be recommitted to the department. Otherwise you should find that he can be safely released on such conditions as this Court might find appropriate.

The court denied Randall's request and instead instructed the jury:

The burden is on the State to prove that Alan A. Randall cannot be safely discharged or released without danger to himself or to others.

Alan A. Randall need not prove he can be safely discharged or released without danger to himself or to others and you are not to assume merely from the fact that he is confined at the Winnebago Mental

Health Institute that he is presently a danger to himself or to others. The State must convince you to a reasonable certainty by evidence which is clear, satisfactory and convincing that Alan A. Randall cannot be safely discharged or released without a danger to himself or others.

Randall asserts that the circuit court's instruction erroneously implied that Randall could not be released unless there was absolutely no danger that he might harm himself or others. We disagree for two reasons. First, the "significant risk" language of § 971.17(4)(d), STATS., 1993–94, was not binding. *See Randall I*, 192 Wis. 2d at 838, 532 N.W.2d at 109. The 1987–88 version of the statute, which was applicable to Randall, specified no particular level of dangerousness. Therefore, the instructions given were correct statements of law. Second, the circuit court submitted three different verdicts to the jury, allowing it to determine whether Randall should be recommitted to the department at an appropriate institution, whether he could be safely released upon such conditions as the court might deem necessary, or whether he could be released safely, without conditions. Therefore, the instructions, taken in context, made clear that Randall could be released with the imposition of certain court-imposed conditions. The circuit court properly exercised its discretion in framing the dangerousness instruction.

**Dangerousness—Sufficiency of the Evidence.**

Randall contends that even if the instruction on dangerousness was proper, the evidence adduced at trial was insufficient to show that he could not be safely released with conditions. He believes that because he no longer manifests signs of mental illness and has

behaved appropriately over a period of years no finding of current dangerousness can be made. We disagree.

There was sufficient evidence for a jury to find that Randall continued to present a danger to himself or others. Randall concedes that his actions in 1974 and 1975 evince a high level of dangerousness. The experts who examined him at the time of the crimes believed that he suffered from a major psychotic disorder, paranoid schizophrenia, and Randall stipulated to that. Additionally, the jury heard no evidence that paranoid schizophrenia is curable. Therefore, the jury could have concluded that Randall had been misdiagnosed as a paranoid schizophrenic at the time of the initial trial, in which case his dangerousness is independent of that mental illness diagnosis, and therefore, his lack of current symptoms of that mental illness was of marginal relevance to the issue of whether he might become violent again. Or, the jury could have concluded he was properly diagnosed initially and remains a paranoid schizophrenic, notwithstanding testimony that he is no longer mentally ill. *See State v. Sarinske*, 91 Wis. 2d 14, 48, 280 N.W.2d 725, 740 (1979) (a jury is not required to accept expert opinions, even if they are uncontroverted).

In other words, the jury could have discounted the experts' opinions based on their failure to explain the change in Randall's diagnosis from the time of the murders to the present. Or, it could have concluded from Randall's hiding items in the ceiling in 1994, denying that all of the items in the ceiling were his, evidencing increased anger levels in 1995, and believing that his continued confinement was political because two of his victims were police officers, that he was still suffering from paranoia. The jury was not required to infer that a person who committed brutal

murders while living in the community, but who behaved appropriately while living in a structured environment, would behave appropriately when living in a less structured environment in the community. In short, we conclude the evidence was sufficient to support a finding of dangerousness, and we will not overturn a jury's verdict which is based on sufficient evidence.

**Due Process.**

Randall proposed to ask the jury, "Is there any medical justification for the Petitioner's continued confinement at the Winnebago Mental Health Institute or any other in-patient mental health facility?" The trial court, holding that the State did not have to prove a therapeutic justification, refused to submit the requested instruction. Randall claims that the court's refusal denied him due process of law.

The United States Supreme Court has held, "It is clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' " *Jones v. United States*, 463 U.S. 354, 361 (1983) (citation omitted). Therefore, an insanity acquitee "is entitled to constitutionally adequate procedures to establish the grounds for his [or her] confinement." *Randall I*, 192 Wis. 2d at 831, 532 N.W.2d at 106 (citation omitted).

Due process includes both procedural and substantive components. *Penterman v. Wisconsin Elec. Power Co.*, 211 Wis. 2d 458, 480, 565 N.W.2d 521, 533 (1997). However, we do not understand Randall to argue that the process he has received was procedurally flawed. *See Randall I*, 192 Wis. 2d at 824, 532 N.W.2d at 103 ("In light of the procedures held constitutional by the

Supreme Court, we conclude that Wisconsin's statutory scheme provides an insanity acquittee with more than sufficient procedural safeguards to insure his or her right to due process.").[6] Rather, Randall claims that he was denied substantive due process because the State was not required to make an individualized showing that his confinement at WMHI served some particular medical justification. That is, although § 971.17(2), STATS., survived a facial challenge in *Randall I*, he reads the language in that case which says that the continued confinement of dangerous insanity acquittees who are no longer exhibiting symptoms of mental illness is permissible "so long as they are treated in a manner consistent with the purposes of their commitment," to impose an additional element of proof on the State. *See id.* at 807, 532 N.W.2d at 96.

While it is true that a court may in some instances add additional requirements to a statute in order to save it from constitutional attack, *State v. Frambs*, 157 Wis. 2d 700, 704, 460 N.W.2d 811, 813 (Ct. App. 1990); *Matalik*, 57 Wis. 2d 315, 327, 204 N.W.2d 13, 18 (1973), that is not what the supreme court did in *Randall I*. Instead, it held, as a matter of law, that there is a "therapeutic value to confining a [currently] sane but dangerous acquitee to one of this state's mental health facilities." *Id.* at 817, 532 N.W.2d at 100. The court viewed this therapeutic value in terms of the overall controlled environment which Wisconsin's mental

---

[6] Randall received a jury trial at which the State bore the burden of proving his continued dangerousness by clear and convincing evidence. In addition, Randall cannot be confined for a period longer than the maximum term of imprisonment for the crimes he committed. *Randall I*, 192 Wis. 2d at 807, 532 N.W.2d at 96.

health facilities provide to assist insanity acquittees in overcoming their destructive or dangerous behavior. *See id.* at 834–35 and 834–35 n.23, 532 N.W.2d at 107 and 107 n.23 (citations omitted). As the court further explained:

> Because this state's mental health facilities provide such comprehensive treatment we cannot conclude that it is punitive to continue an acquittee's confinement based on dangerousness alone. Rather, we conclude that there is a reasonable relationship between the commitment and the purposes for which the individual is committed and, therefore, that insanity acquittees are treated in a manner consistent with the purposes of their commitment.

*Id.* at 808, 532 N.W.2d at 96–97. Therefore, because a Wisconsin insanity acquittee's continued confinement is based on both an initial determination of the cause of his or her criminal conduct, as well as a finding of continued dangerousness, and because Wisconsin's mental health institutions provide an environment designed to reduce dangerousness, no individual showing that confinement is necessary to address a particular medical treatment is required. This conclusion is also in accord with the United States Supreme Court's recent decision in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 2084 (1998) (upholding the constitutionality of Kansas's sexual predator law despite an acknowledged unavailability of effective treatment for pedophilia). In short, we conclude *Randall I* establishes that an insanity acquittee is afforded substantive due process by virtue of Wisconsin's entire scheme.

66

## CONCLUSION

We conclude the circuit court appropriately exercised its discretion; that Randall received all the process he was due on his petition for conditional release; and that the State demonstrated with sufficient evidence that he was still dangerous.

*By the Court.*—Judgment affirmed.