State of Wisconsin, Plaintiff-Respondent,
v.
Cannon Cornell Mack, Defendant-Appellant.
No. 03-2147-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 20, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1 PER CURIAM.
Cannon Cornell Mack appeals the order denying his petition seeking conditional release from his WIS. STAT. § 971.17 commitment. See § 971.17(1) (1987-88).[1] Mack was committed to institutional care after he was found not guilty of first-degree murder by reason of mental disease or defect. Mack submits that the trial court erred in denying his petition because both expert witnessesthe only witnesses to testifyrecommended conditional release and, as a consequence, the State failed to prove that he presents a danger to himself or others. Because the trial court was free to disregard the expert witnesses' opinions, and evidence in the record supports the trial court's finding, we affirm.

I. BACKGROUND.
¶2 Mack was found not guilty of arson by reason of mental disease or defect in 1982. He was conditionally released from institutional care about two years later. Within months, Mack had stopped taking his medication, was abusing drugs and alcohol, and was back in the criminal justice system charged with firstdegree murder after he stabbed a woman in the head when she walked into a laundromat. Mack was again found not guilty by reason of mental disease or defect and was committed to the Winnebago Mental Health Institute in October 1987.
¶3 Mack has filed numerous petitions over the years seeking conditional release. With respect to this appeal, on June 12, 2002, Mack filed a petition seeking conditional release. The trial court appointed two doctors to examine Mack: Dr. John Pankiewicz, on Mack's behalf, and Dr. Kenneth H. Smail, on the State's behalf. After Mack waived his right to a jury trial, the trial court held a hearing on his petition.[2] Both doctors submitted reports and testified. Independently, they both concluded that Mack could be released from the institution, but only under strict conditions that would reduce the risk he posed to the community. These conditions essentially included: (1) Mack residing in a well-staffed group home; (2) staff visually observing him taking his medication; (3) monitoring for alcohol and illicit drug use; (4) monthly appointments with a psychiatrist; (5) supervision by a probation agent trained to work with the mental health population; and (6) Mack attending school or work. The trial court denied Mack's petition and he appeals.

II. ANALYSIS.
¶4 Because Mack was adjudicated not guilty by reason of mental disease or defect before the change in the law effective January 1, 1991, Mack is subject to the 1987 version of WIS. STAT. § 971.17, as affected by 1989 Wis. Act 31. The standard for release in § 971.17(2) provides, in relevant part:
If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department.
Thus, the sole purpose of the hearing on the petition for conditional release is to determine whether an insanity acquittee "may be safely discharged or released without danger to himself ... or others." Id. At a recommitment hearing, the State bears the burden of proving that "the defendant is presently of danger to himself or others." State v. Gebarski, 90 Wis. 2d 754, 757, 280 N.W.2d 672 (1979). At such a hearing, "dangerousness, for recommitment, must be proven by clear and convincing evidence[.]" State v. Randall, 192 Wis. 2d 800, 822, 532 N.W.2d 94 (1995) (citation omitted). In State v. Randall, 222 Wis. 2d 53, 586 N.W.2d 318 (Ct. App. 1998), we stated: "We review the evidence supporting a jury verdict finding dangerousness in the light most favorable to the verdict, and we will affirm if there is any credible evidence, or reasonable inference therefrom, upon which the jury could have based its decision." Id. at 60. Although there was a bench trial in this case, we conclude that the same standard of review applies. See, e.g., State v. Kienitz, 221 Wis. 2d 275, 302, 585 N.W.2d 609 (Ct. App. 1998) (concerning a WIS. STAT. ch. 980 (1995-96) commitment of a sexually violent person, and stating: "We do not see any reason to apply a different standard of review to a sufficiency of the evidence challenge simply because the court, rather than a jury, finds the facts and applies the law (as interpreted by the court in both situations) to those facts.").
¶5 Mack submits that the trial court erred in its finding that he continued to pose a danger to himself and others. He notes that while the trial court was free to reject the two doctors' opinions, by doing so, the trial court "could not legally adopt the opposite conclusion unless there was evidence to support it." Mack contends no evidence was produced to support a finding that Mack is presently dangerous. He argues that the trial court improperly "rel[ied] solely upon [his] prior conduct," and that the other reasons given by the trial court for finding Mack dangerous were only "passing references by the court." We disagree with both contentions.
¶6 With regard to Mack's contention that the trial court improperly relied on Mack's past conduct in reaching its decision, he has correctly noted that a trial court cannot rely solely on past behavior in determining dangerousness. "Although past conduct may be a significant indicator of future behavior, evidence of dangerousness should not rely solely on the acquittee's past conduct." Randall, 192 Wis. 2d at 838. However, the trial court did not find Mack dangerous simply because of his past conduct. Further, what Mack terms "passing references" are actually valid reasons for the trial court's finding of dangerousness.
¶7 The evidence presented to the court supports the trial court's finding. The doctors opined that Mack continued to suffer from paranoid schizophrenia, although his symptoms are now being controlled by medication. As noted, however, the murder occurred when Mack stopped taking his medication. Given Mack's history, he poses a significant risk to others if he discontinues his medication. In addition, the submitted medical reports note that Mack has both an underlying substance abuse problem as well as a personality disorder. This particular personality disorder was described by one of the expert witnesses as "an enduring set of character traits that cause an individual difficulty in social and occupational functioning." Clearly, this disorder will likely impede Mack's integration into society if he is released. Further, as to his substance abuse problem, it is unknown at this time whether Mack will consume alcoholic beverages when he is released and is free to purchase alcohol, as he has been in a restricted and controlled setting for almost seventeen years.
¶8 Additionally, evidence was presented that while Mack has dramatically improved during the years of his commitment, he has not been a model inmate. The staff reports indicate that he has difficulty following multiplestep tasks, is defensive on occasion, and his initial response to staff requests "is a little oppositional." These characteristics may prevent Mack from taking directions from others who are supervising him. As a result, this behavior, too, heightens the risk that Mack will pose to others when released.
¶9 Mack's primary argument in furtherance of his petition was that he has had unescorted trips off the grounds of the institution to attend an anger management program. He submits that this is clear proof that he is no longer dangerous. However, as noted by the trial court, Mack's off-grounds trips were for brief periods of time and he had only been allowed this privilege for approximately six to nine months as of the time of the hearing. The trial court found this fact pivotal in its decision. The trial court felt this was too short a time period to safely conclude Mack was not dangerous when unsupervised.
Where the difficulty comes in, in the Court's opinion, is whether he may be safely released to the community. That's not a medical decision. That's a legal decision. That's a decision that the Court has to make. And based on his past experience, the fact that he's had this unlimited access for only the last nine months, ... I'm of the opinion that although he is also medically doing what is expected of him, and what should be done, nevertheless there still is a substantial danger in my opinion, considering the seriousness of these crimes, and the method and manner in which the crime was committed this last time, this homicide, and his experience since then.
We agree. Given the serious nature of Mack's crime that resulted in his commitment, coupled with his other psychological and social problems, we believe the trial court properly concluded that Mack's unsupervised travels have occurred for too short a period to safely conclude that he poses no risk to the community. Thus, we are satisfied the State presented clear and convincing evidence that Mack is presently dangerous. Accordingly, we affirm.
By the Court.  Order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 1987-88 version unless otherwise noted.
[2] The 1987-88 version of WIS. STAT. § 971.17 allowed for a jury to decide the issue of whether the defendant should be re-committed or granted release. See generally State ex rel. Gebarski v. Circuit Court for Milwaukee County, 80 Wis. 2d 489, 259 N.W.2d 531 (1977).