**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 19, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2021AP1987-CR**

Cir. Ct. No. **1985CF1242**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL T. SPENCER,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Michael Spencer appeals from an order denying his petition to discharge his commitment as a person adjudged not guilty of a

criminal offense by reason of mental disease or defect (NGI). Spencer challenges the circuit court's determination that he meets the standard for dangerousness required to continue his NGI commitment. We conclude that the record contains sufficient evidence to support the dangerousness determination, and therefore we affirm.

## BACKGROUND

¶2      In 1985, Spencer shot and killed his wife and seriously injured his father-in-law. The following year, a jury acquitted Spencer of murder and attempted murder charges on NGI grounds. The circuit court consequently committed Spencer to the custody of the Department of Health and Social Services for institutionalized treatment.

¶3      The circuit court ordered Spencer to be conditionally released from his NGI commitment in 1988. The court revoked Spencer's conditional release in 1993, however, after Spencer assaulted a woman with whom he was then in a relationship. The court again granted Spencer's conditional release in 1995. The court then denied petitions to discharge Spencer's NGI commitment in 2008 and 2016. It is the court's denial of Spencer's second discharge petition that is the subject of this appeal.[1]

¶4      The record before the circuit court at the 2016 discharge hearing included all of Spencer's prior proceedings and psychological reports. In addition, the parties each presented expert testimony regarding Spencer's current status.

---

[1] This court reinstated Spencer's time to appeal the 2016 decision after determining that he had been abandoned by his counsel. We subsequently directed the circuit court to issue a written order memorializing its oral decision from the hearing.

¶5 Doctor Frank Cummings testified for the defense. Cummings opined that Spencer had a personality disorder with some narcissistic and obsessive-compulsive components, as well as an elevated score on the "histrionic scale" dealing with emotional presentation, but that he was not currently suffering from any "acute diagnosable mental health disorder that … typically would prompt some kind of treatment or some kind of medication." Cummings noted that Spencer had been "relatively symptom free" for at least the past seven years, during which time he was not taking any medications or receiving any psychiatric treatment. Cummings further noted that neither Spencer's case manager nor his probation officer recommended further therapy, and Cummings himself did not see any compelling need for additional mental health services. Cummings concluded that Spencer did not present a substantial risk of harm to himself or others.

¶6 When asked about Spencer's prior diagnosis of paranoid schizophrenia, Cummings observed that symptoms of mental illness "can wax and wane depending upon situational stressors." Cummings agreed that if Spencer's prior schizophrenia diagnosis was correct, then there was a risk that symptoms could reappear with stress from future situations, such as Spencer being involved in domestic relationships or trying to make a living as an artist displaying his work at traveling shows—a potential career option mentioned by Spencer.

¶7 Doctor Deborah Collins testified for the State. Collins also diagnosed Spencer as having an "unspecified personality disorder with a history of narcissistic, histrionic and obsessive-compulsive features." In Collins' opinion, people with personality traits such as Spencer's tend to lack insight into their own shortcomings, making them less likely to seek help when they need it. In that respect, Collins was concerned that Spencer rated his own risk of committing

future acts of violence to be zero. Collins was also concerned that Spencer had demonstrated a pattern of "boundary issues" while on conditional release.

¶8      Collins further noted that although Spencer had been diagnosed as suffering from a psychotic spectrum disorder at the time of the offenses, he had never been treated with psychotropic medications. Collins observed that schizophrenia is an enduring psychiatric condition that does not spontaneously remit. Given Spencer's personality disorder and the fact that he had committed violent offenses when not on supervision, Collins concluded that Spencer's "capacity to navigate stressors independently and adaptively [was] compromised." In Collins' opinion, without the accountability and support structure of Spencer's conditional release, there was a significant risk that Spencer would harm himself or others if stressors caused his symptoms to re-emerge in the future.

¶9      In considering Spencer's petition for discharge, the circuit court first noted that, because schizophrenia can wax and wane but cannot be cured, and because aspects of Spencer's enduring personality disorder also contributed to him shooting his wife and father-in-law, Spencer still possessed the characteristics that led to the offenses. The court next observed that the shootings demonstrated Spencer had the capacity for violence when subjected to stressors. The court agreed with Collins' opinion that Spencer's lack of insight into his capacity for violence created a risk that he would not recognize or seek help for problems associated with future stressors, and that Spencer's travel and art business created the potential for stressful circumstances. The court concluded that Spencer's "dangerousness to others persists," and it denied the petition for discharge.

## DISCUSSION

¶10    Pursuant to WIS. STAT. § 971.17(8) (2021-22),[2] the commitment, release, and discharge of persons adjudged NGI prior to January 1, 1991, is governed by the 1987-88 version of the Wisconsin Statutes, as affected by 1989 Wis. Act 31. A circuit court shall discharge an NGI commitment made prior to 1991 if the court is "satisfied" that the committed person may be "safely discharged … without danger to himself or herself or to others." Sec. 971.17(2) (1987-88).[3]    In making its discharge decision, the court may consider subsequently enacted statutory criteria regarding dangerousness, including "the nature and circumstances of the crime, the person's mental history and current mental condition, the person's behavior while on conditional release, and plans for the person's living arrangements, support, treatment and other required services after termination of the commitment order." Sec. 971.17(5); *State v. Randall* (*Randall II*), 222 Wis. 2d 53, 60-61, 586 N.W.2d 318 (1998). An NGI acquittee who is no longer mentally ill may be recommitted based upon dangerousness alone without violating due process as long as the commitment continues to serve the goal of "reduc[ing], to an acceptable level, the risk of danger which the individual poses" by, for instance, providing treatment for a

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[3] We note that the circuit court erroneously applied the test set forth in the current version of the statutes—namely, that the court "shall terminate the order of commitment unless it finds by clear and convincing evidence that further supervision is necessary to prevent a significant risk of bodily harm to the person or to others or of serious property damage." *See* WIS. STAT. § 971.17(5). However, if the court was satisfied by clear and convincing evidence that further supervision was necessary to prevent a significant risk of harm to Spencer or others, it necessarily follows that the court was not satisfied that Spencer could be safely released without danger to himself or others.

behavioral disorder. *State v. Randall* (*Randall I*), 192 Wis. 2d 800, 837-41, 532 N.W.2d 94 (1995).

¶11    As a threshold matter, the parties dispute the applicable standard of review. The State contends that we must affirm the denial of a petition to discharge an NGI commitment as long as there is any credible evidence in the record to support the circuit court's decision, even if contrary evidence was also produced. The State relies on *State v. Randall* (*Randall III*), 2011 WI App 102, ¶17, 336 Wis. 2d 399, 802 N.W.2d 194, in which this court applied that deferential standard for evaluating the sufficiency of the evidence to support the denial of a petition for conditional release from an NGI commitment.

¶12    Spencer asserts that *Randall III* deviates from the mixed standard of review used by the Supreme Court of Wisconsin to evaluate determinations of dangerousness in other types of civil commitment cases. *See, e.g.*, *Langlade County v. D.J.W.*, 2020 WI 41, ¶¶24-25, 391 Wis. 2d 231, 942 N.W.2d 277 (applying a mixed standard to review the sufficiency of the evidence to support a dangerousness determination in a WIS. STAT. ch. 51 recommitment). Spencer contends that this court should uphold any findings of fact made by the circuit court unless they are clearly erroneous, but we should then independently determine whether those facts satisfy the statutory standard for a continued NGI commitment.

¶13    We see no principled distinction between the review of an order denying conditional release from an NGI commitment and one denying discharge from an NGI commitment. Nevertheless, "[NGI] acquittees constitute a special class that should be treated differently from other candidates for commitment." *Randall I*, 192 Wis. 2d at 817 (citation omitted). Therefore, while we recognize

6

that the standard of review set forth in *Randall III* may deviate from that used in other types of civil commitment cases, we conclude that we are bound by *Randall III* in a WIS. STAT. § 971.17 case. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶14    Spencer contends that the evidence was insufficient to establish that he is presently a danger to himself or others because he is not currently diagnosed with a major mental illness and he has functioned well in the community for years without mental health treatment.   It is not, however, our job to reweigh the evidence supporting discharge against the evidence against it.

¶15    Applying a deferential standard of review, we conclude that the circuit court's decision to deny Spencer's discharge from his NGI commitment was supported by credible evidence.   The court could properly determine that Spencer could not be safely released from his commitment without danger to himself or others because:  (1) the shooting of his wife and father-in-law evinced a capacity for violence toward others; (2) Spencer still possessed the personality disorder that contributed to the shootings; (3) the paranoid or delusional symptoms Spencer had previously experienced could recur if he were subjected to stressors in the future; and (4) Spencer lacked the necessary insight to seek help if he experienced future stressors.  Meanwhile, the NGI commitment continued to serve the goal of reducing Spencer's dangerousness because the supervision structure provided an opportunity to recognize and address the effect of future stressors on Spencer's behavior.  We therefore affirm.

> *By the Court.*—Order affirmed.

> This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.