Napoleon S. HERNANDEZ, Appellant,

v.

UNITED STATES, Appellee.

No. 03–CF–175.

District of Columbia Court of Appeals.

Argued May 25, 2004.

Decided July 8, 2004.

Kenneth H. Rosenau, Washington, DC, for appellant.

Sharon A. Sprague, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and KING, Senior Judge.

FARRELL, Associate Judge:

A jury found appellant guilty of armed aggravated assault on Alejandro Ventura. D.C.Code §§ 22–404.1, –4502 (2001). The sole issue on appeal is whether the trial judge erroneously denied a defense request to instruct on self-defense. Although the evidence supporting the defense was admittedly slight, it was sufficient under our standards to justify the instruction. The failure to give the instruction was therefore error, and because the error denied the jury any guidance on the relevant legal principles, we must reverse and remand for a new trial.

### I.

On September 2, 2001, at about 11:30 p.m., appellant stabbed Alejandro Ventura multiple times in the abdominal area.[1] Since appellant did not testify at trial, Ventura was the only eyewitness to the stabbing who took the stand. He stated that he had spent the afternoon of September 2 watching television with his brother. Later that evening while walking home, he encountered appellant, whom he knew casually from the neighborhood. Appellant asked him to "[w]ait up ... because [he was] going home also," and when Ventura replied that he was on his way to buy a beer, appellant asked Ventura to buy one for him too. Ventura agreed, and bought a 32–ounce "bull beer" for appellant and two 22–ounce Heinekens for himself. The two men stopped under a nearby tree to drink the beverages. At one point in their conversation, Ventura "innocently" asked

---

1. The testimony was uncertain as to exactly when the stabbing took place, but the trial judge (in ruling on the admissibility of certain evidence) concluded from the evidence that 11:30 p.m. was the time, and the jury could reasonably infer likewise.

appellant "whether he had the courage . . . [l]ike to stick a knife into someone else." Appellant answered, "Yes, why not?"

A few minutes later, as Ventura and appellant finished their beers, Ventura felt appellant "poke" him. Ventura said "bug off" but appellant continued to "poke" him. After appellant jabbed him three more times, Ventura noticed blood oozing from his torso. He attempted to follow appellant, who was running away, but after a block he realized that appellant was too far away to catch up with him. By this time Ventura was bleeding profusely. Realizing he was close to his apartment, he returned home and had his wife call an ambulance. He was taken to Howard University Hospital where he underwent major surgery, received forty stitches, and remained in the hospital for nine days. Ventura testified that he had no idea why appellant had stabbed him; he and appellant had not fought immediately before the stabbing, and they had never had a personality conflict. Interviewed by police detective Medina at the hospital, Ventura identified appellant by name and description as his assailant.

Appellant called two witnesses in his defense, his mother and Dr. Sanford Edberg, an expert in pathology. Ms. Hernandez testified that on the night of September 2 appellant returned to the home they shared at around midnight. His hair and back were covered with leaves and he had scratch marks on his throat that looked "as if somebody had . . . grabbed him." Ms. Hernandez described the scratch marks by a hand gesture which the court explained for the record as "indicating as if somebody was using both hands . . . in a choking fashion." Appellant's eyes were "really red," he "look[ed] nervous," and there was bleeding on his neck from the scratches. He also had a swelling on the right side of his head. Ms. Hernandez helped him to bed, and the next day she saw a bruise on his neck—again "as if somebody had put their hands around his neck."

Dr. Edberg based his testimony upon review of Ventura's medical records from Howard University Hospital, information supporting the warrant for appellant's arrest, and the transcript of Ms. Hernandez' testimony at appellant's pretrial detention hearing. He had determined that Ventura was a "chronic user of alcohol," and offered the opinion that "many people under the influence of alcohol tend to become combative . . . for trivial reasons." [2] The doctor further described the wounds Ventura had suffered, explaining that there were four stab wounds to the abdominal area, three of them "superficial" in that they did not "penetrate into the underlying body cavity," and a fourth that "indeed did penetrate into the underlying peritoneal cavity" and, while not entering the stomach, severed the gastric artery and caused significant blood loss. Asked whether these wounds were "consistent with somebody stabbing from the ground up," he affirmed that "they would be consistent with someone underneath stabbing upwards. Yes, absolutely." Dr. Edberg also (and without objection) summarized Ms. Hernandez' description at the earlier hearing of appellant's appearance when he returned home, including the "series of scratches which completely encompassed the front of the neck from ear to ear in what appeared . . . to be a linear fashion," followed by bruising. Asked if he had an

---

**2.** The government objected to the doctor's qualifications to express opinions regarding alcoholism and its effects, but the trial judge allowed the testimony. The government does not dispute the admissibility of this evidence on appeal, arguing instead that it adds nothing to the factual basis for a self-defense instruction.

opinion as to "how those bruises could have been caused," he replied that "they could have been caused by somebody's hand pressing forcefully into that region."

## II.

 Although "[t]he trial judge may properly refuse to give [a defendant's requested] instruction where no factual or legal basis for it exists, ... the failure to give such an instruction where some evidence supports it is reversible error." *Frost v. United States*, 618 A.2d 653, 662–63 n. 19 (D.C.1992). The test for "some evidence" is "a minimal one," *Shuler v. United States*, 677 A.2d 1014, 1017 (D.C. 1996) (citation and internal quotation marks omitted): "[a] defendant is entitled to a jury instruction on a theory of the case that negates his guilt ... if the instruction is supported by any evidence, however weak," *Graves v. United States*, 554 A.2d 1145, 1147 (D.C.1989) (citations and internal quotation marks omitted). As we similarly stated in *Wilson v. United States*, 673 A.2d 670, 672–73 (D.C.1996), "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."[3] "[I]n reviewing the denial of a requested defense instruction, [this] court examines the evidence in the light most favorable to the defendant." *Frost*, 618 A.2d at 662–63 n. 19.

 More particularly, in order to invoke self-defense a defendant must be able to point to evidence satisfying each of the following conditions:

(1) there was an actual or apparent threat; (2) the threat was unlawful and immediate; (3) the defendant honestly and reasonably believed that he was in imminent danger of death or serious bodily harm; and (4) the defendant's response was necessary to save himself from the danger.

*Brown v. United States*, 619 A.2d 1180, 1182 (D.C.1992) (per curiam), citing *inter alia United States v. Peterson*, 157 U.S.App. D.C. 219, 226–27, 483 F.2d 1222, 1229–30 (1973). "[A]n accused is entitled to a self-defense instruction if the evidence, either that of the defense or prosecution, fairly raises the issue," *Guillard v. United States*, 596 A.2d 60, 63 (D.C.1991) (citation and internal quotation marks omitted); "the testimony of the defendant is not necessary to put [the] claim before the jury." *McClam, supra* note 3, 775 A.2d at 1104 (citing *Reid v. United States*, 581 A.2d 359, 367 (D.C.1990)).

 Applying these standards, we conclude that appellant "fairly raise[d]" the issue of self-defense because there was "some evidence," however weak, supporting the conditions for the defense set forth above. The government's evidence depicted a multiple stabbing by appellant precipitated by nothing more than Ventura's idle question to him of "whether he had the courage ... to stick a knife into someone else." Appellant presented contrary testimony that, as little as a half hour later, he returned home with injuries to his neck that appeared to his mother as if someone had grabbed him around the neck and choked him, leaving his neck scratched and bruised; and he had debris in his hair and on his back suggesting that he had been lying on his back. Further, Dr. Edberg opined from the record of *Ventura's*

---

3. Another way of saying this is that the issue addressed by the instruction need only be "fairly raise[d]" by the evidence, although "trial judges properly deny instructions which require the jury to engage in bizarre reconstructions of the evidence." *McClam v. United States*, 775 A.2d 1100, 1104 (D.C.2001) (citations and internal quotation marks omitted).

wounds that they could have been inflicted by someone lying on the ground and stabbing upwards. Taking this evidence in its entirety,[4] it fairly raised the issue of whether appellant and Ventura had struggled, and whether in the course of the struggle appellant actually and reasonably believed that he was in imminent danger of serious injury from Ventura, and therefore stabbed him.

Contrary to the government's position, this scenario is not a "bizarre reconstruction[ ] of the evidence." *McClam, supra* note 3, 775 A.2d at 1104. It is true, as the trial judge observed, that although appellant came home "with marks [on his neck] and leaves on the back of his head[,] ... all of that could have occurred somewhere else [than in a fight with Ventura]." But it would not have been speculative for the jury to infer that the most natural place and time for appellant's injuries to have been acquired was barely a half hour earlier when, according to the government's evidence, appellant met up with Ventura and stabbed him without any apparent provocation. It is also true, as the government points out, that Dr. Edberg never actually examined Ventura's wounds and that in support of his opinion that "[a]bsolutely" they could have resulted from an upward, or defensive, stabbing he cited only to the superficial nature of three of

them. But Dr. Edberg's opinion was before the jury without objection; the prosecutor left it essentially uncross-examined; and it is not for us to say that the jury was precluded from giving it any weight in determining the circumstances in which Ventura was wounded.

In sum, appellant's defense that he stabbed Ventura while threatened with serious injury by a stronger man[5] who pinned him to the ground with a hand around his neck was not so barren of evidentiary support that it could legitimately be kept from the jury. The contrary arguments of the trial court and the government go instead to "the *weight* of the evidence supporting the instruction," and hence are "immaterial" to the issue before us. *Shuler,* 677 A.2d at 1017 (emphasis in original).[6] Appellant's defense might well have failed anyway as a practical matter without his own testimony describing the circumstances of the altercation (assuming there indeed was one); but that was not reason to deny him an instruction that had the required modicum of evidentiary support. *See Reid,* 581 A.2d at 367 (weak circumstantial evidence "of Reid's engaging in an argument with several others while holding a knife could have indicated that Reid was outnumbered and was in the process of warding off an

---

**4.** An inference of self-defense fairly reached by crediting portions both of the government's evidence and of the defense evidence will, of course, entitle the defendant to the instruction. *See Guillard,* 596 A.2d at 63.

**5.** On cross-examination, police detective Medina acknowledged that Ventura was "a much bigger [and "bulkier"] person than [appellant]."

**6.** At one point the judge appeared to rule out the self-defense instruction because, in his view, no evidence supported "an inference ... that the defendant was not the first aggressor." *See Martin v. United States,* 452

A.2d 360, 363 (D.C.1982) ("It is fundamental that when one is the aggressor in an altercation, he cannot rely upon the right of self-defense to justify his first use of force."). The testimony of Ms. Hernandez and Dr. Edberg, however, supported a reasonable inference—however weak—that the altercation began or escalated significantly when Ventura, his hand clasped rightly around appellant's neck forced appellant onto his back, thereby justifying an instruction on who was the first aggressor, *see* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.16 (4th ed. 2002), as part of the instructions on self-defense.

attack by the group[,]" and therefore was sufficient to justify self-defense instruction).

 Although not explicitly arguing harmless error, the government points out that the trial judge in fact told the jury that appellant's theory was self-defense, and even allowed him to argue self-defense in summation. But an instruction to the jury must "properly inform [it] of the applicable principles involved," *Stewart v. United States,* 687 A.2d 576, 579 (D.C. 1996), and here the jury learned nothing about the legal meaning of self-defense, including concepts that, from the accused's point of view, could have been vital to the jury's proper evaluation of the evidence. *See, e.g.,* CRIMINAL JURY INSTRUCTIONS, *supra* note 5, No. 5.12 ("The question is not whether looking back on the incident you believe that the use of force was necessary. The question is whether the defendant, under the circumstances as they appeared to him/her at the time of the incident, actually believed that s/he was in imminent danger of bodily harm, and could reasonably hold that belief"). Permitting appellant to argue self-defense was not an adequate proxy for an instruction explaining the relevant principles.

*Reversed and remanded for a new trial.*

KING, Senior Judge, dissenting.

Because evidence supporting a self-defense instruction was essentially nonexistent, I respectfully dissent from the majority's reversal of the conviction in this case.