**Eugene P. BLOCKER, Appellant**

v.

**UNITED STATES, Appellee.**

No. 03–CF–253.

District of Columbia Court of Appeals.

Argued Sept. 22, 2005.
Decided Jan. 24, 2008.

Amanda K. Grace, appointed by the court, with whom Eric L. Yaffe, Washington, DC, also appointed by the court, was on the brief, for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Thomas J. Tourish, Jr., and G. Bradley Weinsheimer, Assistant United States Attorneys, were on the brief, for appellee.

---

\* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. D.C.Code § 22–405 (2001) provides in part:

   (a) Whoever, without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia ... while engaged in or on account of the performance of his or her official duties, shall be fined not more than $5,000 or imprisoned not more than 5 years, or both....

Before REID, Associate Judge, and BELSON and TERRY, Senior Judges.\*

TERRY, Senior Judge:

After a jury trial, appellant was convicted of assault on a police officer ("APO") and carrying a pistol without a license ("CPWL"). On appeal he contends that the trial judge committed reversible error when, after realizing that he had instructed the jury on an unindicted charge of APO while armed, he withdrew the indicted charge of APO with a dangerous weapon and reinstructed the jury, after it had begun deliberations, on the lesser included charge of APO. Appellant also argues that the trial judge committed reversible error when he denied a defense request to instruct the jury on justifiable or excusable cause. We find no error and accordingly affirm appellant's convictions.

## I

Appellant was charged in a five-count indictment with APO with a dangerous weapon (Count One),[1] possession of a firearm during a crime of violence ("PFCV") based on the APO with a dangerous weapon (Count Two), assault with a dangerous weapon ("ADW") (Count Three), PFCV based on the ADW (Count Four), and CPWL (Count Five). These charges were based on an incident involving Metropoli-

   (b) Whoever in the commission of any such acts uses a deadly or dangerous weapon shall be imprisoned not more than 10 years.

   Count One charged appellant with a violation of D.C.Code § 22–405(b). The indictment did not charge him with the commission of any offense "while armed with" a dangerous weapon. Such "armed" offenses are punishable under a separate statute, D.C.Code § 22–4502 (2001), which prescribes a mandatory minimum prison term of five years for a first offense and authorizes a sentence of any number of years "up to life imprisonment."

tan Police Officers Lance Andriani and Bryan Waid, who were investigating a parked car in a residential parking lot in Southeast Washington at about 7:30 a.m. on September 28, 2001. Appellant and two other men were seated in that car. Although there was conflicting evidence as to when the officers realized that the car had three occupants, there is no serious dispute that appellant had a gun in his possession.[2]

When appellant got out of the car, Officer Waid saw that he had a gun in his hand. Appellant started to raise the gun and point it toward Officer Waid. Fearing that he was in danger of being shot, the officer moved toward appellant and tried to tackle him. As the two of them wrestled with each other, the officer felt the gun's barrel hit his legs and then come up underneath his protective vest. Officer Waid immediately struck appellant's hand, and the gun fell to the ground. The two men continued their struggle, in the course of which appellant struck Waid in the face several times and knocked his glasses off, until Officer Andriani came to Officer Waid's assistance. The two officers then tried to subdue appellant with the use of pepper spray, but he continued to resist and, according to Officer Andriani, tried to grab Andriani's gun from its holster. Finally, after Officer Andriani drew his baton, appellant fell to the ground, and the officers managed to handcuff him. Neither officer actually struck appellant with a baton or with any other object.

When the case came to trial, the court erroneously informed the prospective jurors at the beginning of the voir dire that the offense charged in the first count was APO, not APO with a dangerous weapon. A few minutes later, still during the voir dire, the court again incorrectly stated that "the charges in this case include assault on a police officer, possessing a pistol." Neither the prosecutor nor defense counsel noticed or pointed out the court's error. The next day, after the voir dire was completed, the court correctly read the charges from the indictment to the newly empaneled jury.

During closing argument, defense counsel asked the jury to acquit appellant of Counts One through Four because, in order to obtain a conviction, the government had to prove that appellant "had a gun in his hand when the acts were committed." The government objected, and the court sustained the objection because it mistakenly believed that the offense charged in Count One was APO while armed.[3] Again, no one noticed the court's error.

In its final instructions, the court again told the jury that Count One charged APO while armed, rather than APO with a dangerous weapon. Specifically, the court said, "At the time of the offense the defendant was armed with or had readily available a pistol." However, about three hours after the jury had begun its deliberations, the court realized that it had improperly instructed the jury on Count One and summoned both counsel to the

---

**2.** Officer Waid testified that he saw a gun in appellant's hand. Officer Andriani said that he was talking with another occupant of the car when he heard a gun fall to the ground and returned to assist Officer Waid. In addition, two civilian witnesses saw all or part of this encounter from their apartment windows. Kathleen Blakney testified that she could not see anything in appellant's hand or the waistband of his pants. Mildred Sullivan stated that she saw a gun fall to the ground from the

front of appellant's waist area before appellant and the officer began to struggle.

**3.** The court further stated:

That's not the requirement for the charge of assault or resisting a police officer while armed. It only requires that the defendant be in possession of a gun and have it readily available. It does not require that he have it in his hand.

courtroom to consider how to resolve the situation. After some discussion, the court denied defense counsel's request to reinstruct the jury on the correct elements of APO with a dangerous weapon. Instead, the court withdrew the APO with a dangerous weapon charge entirely and gave new instructions on the lesser included offense of APO. Count Two, charging PFCV (based on the offense charged in Count One), was also withdrawn from the jury's consideration.

The court then allowed both counsel to present additional closing arguments to the jury based on these changes, but it denied defense counsel's renewed request to include in the jury instructions for Count One a statement that the government must prove that appellant "acted without justifiable or excusable cause."[4] *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.11 (4th ed.1993). After being reinstructed, the jury deliberated for less than two hours before finding appellant guilty of APO and CPWL.

## II

We review decisions on whether to reinstruct a jury for abuse of discretion. *Alcindore v. United States*, 818 A.2d 152, 155 (D.C.2003); *Davis v. United States*, 510 A.2d 1051, 1052 (D.C.1986). This court has previously upheld a trial court's decision to give supplemental instructions to a jury on a new theory of criminal responsibility. *See Bouknight v. United States*, 641 A.2d 857 (D.C.1994). However, we have not yet considered whether it is an abuse of discretion for a trial court in a criminal case to withdraw a charge and reinstruct the jury on a lesser included offense of that charge after it has begun its deliberations.

In this case both parties (and the trial judge, as the record makes clear) agreed that the original instruction that was given to the jury was erroneous. The issue before us is whether the *reinstruction*, despite its accuracy as an instruction on the lesser included offense of APO, requires reversal. We hold that reversal is not required because appellant did not suffer any real prejudice.

First of all, we agree with the government that the court had an affirmative obligation to correct its own error because, as the government states in its brief, "a trial court cannot permit a known instructional error to go uncorrected." Although the jury had not yet expressed any confusion regarding the offense charged in Count One of the indictment, "the trial court recognized that because the jury had received an erroneous instruction, the jury could not have had a correct understanding of the law applicable to Count One." Thus the court had a "duty ... to instruct the jury only as to the correct law applicable to the particular case." *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir.), *cert. denied*, 488 U.S. 832, 109 S.Ct. 89, 102 L.Ed.2d 65 (1988).

After reinstructing the jury, the trial court gave the parties an opportunity to make additional closing arguments. The reinstruction removed the issue of the use of a weapon from Count One and also eliminated Count Two, which charged appellant with PFCV based on Count One, from the jury's consideration. Both counsel took advantage of the opportunity and made further closing arguments to the jury, which then retired to resume its deliberations.

---

4. The court had previously denied defense counsel's request for this instruction at the close of all the evidence, on the ground that there was no evidence before the jury to support a claim that the officers had used excessive force or that appellant's resistance was justifiable or excusable.

Appellant relies on *People v. Gramc,* 271 Ill.App.3d 282, 207 Ill.Dec. 559, 647 N.E.2d 1052 (5th Dist.1995), to support his claim that he was prejudiced because his defense strategy was undermined by the trial court's reinstruction. In *Gramc* the defendant asserted that he was denied his constitutional right to be present at all phases of his trial on a charge of armed sexual assault because he was not in the courtroom when the trial judge discussed a jury note with counsel and then replied to it. The jury note asked if the defendant could be found guilty of unarmed sexual assault. The judge responded, "You have all the instructions before you with which you are to reach a decision," and declined to instruct the jury further. *Id.* at 284, 207 Ill.Dec. 559, 647 N.E.2d at 1053. There was no other evidence to support the complainant's testimony that her assailant had a knife because no knife was found at the scene of the assault or on the defendant's person when he was arrested. Under these circumstances, if the jury did not believe the complainant's testimony about the presence of a knife, it would have to conclude that her allegations of sexual assault were false. *Id.* at 284, 207 Ill.Dec. 559, 647 N.E.2d at 1053–1054. The appellate court held that if the trial court had instructed the jury on the lesser included offense of unarmed sexual assault, it would have interfered with the defense's "all-or-nothing strategy." *Id.* at 290, 207 Ill.Dec. 559, 647 N.E.2d at 1057–1058.

In the instant case, there was strong and unequivocal evidence that appellant had a gun in his possession which fell to the ground during his struggle with Officer Waid. There was, on the other hand, conflicting evidence as to whether appellant actually pointed the gun at Officer Waid. *Gramc* is distinguishable because that case revolved around the credibility of the complainant, who testified that she had been attacked by a knife-wielding assailant.[5] Here, however, there was no real dispute that appellant had a gun in his hand; the principal issue before the jury under Count One as originally charged was whether he assaulted the officer with that gun (*i.e.,* whether he pointed the gun at the officer). In its reinstruction to the jury, the court removed that very issue from the jury's consideration and thus reduced appellant's exposure to a very substantial penalty under Count One,[6] as well as any penalty at all under Count Two. We find nothing in appellant's defense at trial, or in his brief on appeal, that would lead us to conclude that he was prejudiced as a result of the new jury instruction.

Appellant asserts that because "the [g]overnment never indicated that it would request instructions on lesser included offenses prior to closing arguments," his trial counsel continued to pursue the same defense strategy, *i.e.,* that he "had never held or pointed the gun" at the police officer. He theorizes that the reinstruction of the jury, although not initiated at the government's request, permitted the government to abandon its "all or nothing" approach of offering the jury only the

---

5. Even in Illinois, the precedential value of *Gramc* is uncertain. The *Gramc* court itself noted that it was in disagreement with another Illinois appellate court. *See* 271 Ill.App.3d at 290, 207 Ill.Dec. 559, 647 N.E.2d at 1057–1058. In addition, the Illinois Supreme Court, in a later case, called *Gramc* "incorrect" in suggesting "that a trial court may not instruct a jury *sua sponte.*" *People v. Garcia,* 188 Ill.2d 265, 280, 242 Ill.Dec. 295, 721 N.E.2d 574, 582 (1999).

6. Under the APO statute, *supra* note 1, an assault on a police officer with a dangerous weapon is punishable by a prison term of ten years (subsection (b)), whereas an "ordinary"—weaponless—assault on a police officer is punishable by a term of only five years (subsection (a)).

more serious charge of APO with a dangerous weapon, without also leaving open the possibility of a guilty verdict on the lesser included offense of APO. This argument is misconceived. Super. Ct.Crim. R. 30 permits the parties to remain silent as to whether they are requesting any jury instructions on lesser included offenses until after the close of the evidence. The government could easily have requested instructions on lesser included offenses at that point, but it did not. The trial court noted, during its discussion with counsel about the reinstruction of the jury, that it would have given such an instruction if requested. On this record, we conclude that appellant's strategy to pursue a defense theory that he "had never held or pointed the gun" was undertaken at his own risk. The only prejudice that appellant can now assert is that he was not permitted to argue the lesser included offense of APO in his closing argument. That claim of prejudice evaporates when we consider that the trial court permitted both parties to make further closing arguments after the jury was reinstructed, but that defense counsel again "focused on establishing that [appellant] had never held or pointed the gun."

*State v. Thurmond,* 270 Wis.2d 477, 677 N.W.2d 655 (Wis.Ct.App.2004), another case on which appellant relies, is distinguishable on its facts. In *Thurmond* the appellate court concluded that the defendant was unfairly prejudiced when the jury requested lesser included offense instructions after fourteen hours of deliberation. That request was initially denied by the trial court, but the instructions were later given after a request by the prosecutor. The appellate court held that the lesser included offense instructions were prejudi-

cial because "a reasonable · jury [would] believe that the trial court was now endorsing the new instructions," and the jury was eager to be released and did not carefully consider whether the defendant was guilty of the lesser included offenses. *Id.* at 493, 677 N.W.2d at 663. Appellant has not made such an argument in his brief on appeal, and at oral argument his counsel acknowledged that *Thurmond* was an "extreme" case. Moreover, there is nothing in this record to suggest that the trial court "endorsed" the new instructions; rather, the court explained to the jury that it had made a mistake in its original instructions, and that the purpose of the reinstruction was simply to correct that mistake. Nor can we conclude that the jury felt pressured to reach a verdict, since it had been deliberating for only three hours before the reinstruction was given.

We have held that "[s]upplemental instructions are one means by which a trial court may alleviate juror confusion." *Bouknight,* 641 A.2d at 860.[7] Here the trial judge gave a supplemental instruction after the jury had begun its deliberations in order to correct his earlier erroneous instruction on the charge of APO while armed with a dangerous weapon. In this case, as in *Bouknight,* "it was well within the discretion of the trial court to issue the supplemental instruction," since the facts of the case supported a new instruction on the lesser included offense of APO, and, more importantly, the original, erroneous instruction could not be allowed to stand uncorrected. *Id.* at 860.

■ Citing *Thurmond,* appellant also argues that the court should have given what he calls "balancing instructions." He asserts, for example, that the court "should have instructed the jury not to

---

**7.** In *Bouknight* we upheld the trial court's supplemental instruction to the jury after it had commenced deliberations. That instruction was given when the government request-

ed an aiding and abetting instruction after a note from the jury caused it to realize that it should present "a new theory of liability." *See* 641 A.2d at 859.

treat the instructions on the lesser included offense any differently than the other instructions," and that it "should have explicitly instructed the jury not to place more emphasis on the lesser included charge of assault on a police officer." Assuming for the sake of argument that such instructions might have been appropriate, appellant concedes that his counsel never requested them, and thus that we would have to find plain error in order to reverse on this ground. *See Williams v. United States,* 858 A.2d 984, 991–992 (D.C.2004). We see no plain error here. In the first place, there is no real dispute that the supplemental instructions given by the trial court were legally correct. Moreover, given the trial court's "broad discretion in fashioning jury instructions," any failure to give the sort of "balancing instructions" now proposed by appellant—even if they had been requested—would not be a ground for reversal so long as "the court's charge, considered as a whole, fairly and accurately state[d] the applicable law." *Psychiatric Institute of Washington v. Allen,* 509 A.2d 619, 625 (D.C.1986) (citations omitted). On this record we cannot find plain error.

Finally, we cannot discern any prejudice to appellant's case resulting from the reinstruction. His defense at trial, as he admits in his brief, was "focused on establishing that he had never held or pointed the gun," and even after his counsel was given an opportunity to present further argument to the jury after the reinstruction, counsel emphasized that "the argument is still the same. You can't believe what the officers have to say in this case."[8] He now claims that had he known that an instruction on the lesser included offense

of APO would be given, he would have put more emphasis on "an excusable or justifiable cause defense." But, as the government points out, defense counsel made this very argument in his supplemental closing, and the jury nevertheless found it wanting.

For these reasons we find no error in the trial court's decision to reinstruct the jury as it did.

### III

■■■ A defendant is entitled to an instruction on any recognized defense for which there is "any evidence, however weak," that would be sufficient to permit a reasonable jury to find in his favor. Furthermore, in reviewing the denial of a requested defense instruction, this court examines the evidence in the light most favorable to the defense. *E.g., Hernandez v. United States,* 853 A.2d 202, 205 (D.C.2004) (citing cases). We have also made clear in *Hernandez,* however (and in many other cases), that a trial judge may properly refuse to give a requested instruction "when no factual or legal basis for it exists. . . ." *Frost v. United States,* 618 A.2d 653, 662–663 n. 19 (D.C.1992) (cited in *Hernandez,* 853 A.2d at 205). Appellant contends that the trial court erred in denying his request for a jury instruction that the government must prove he acted without justifiable or excusable cause. This argument is without merit because there was no evidentiary support for such an instruction.

■■■ A defendant cannot claim self-defense to justify an assault on a police officer unless there is some evidence that the officer used excessive force to effect an arrest. *Robinson v. United States,* 649 A.2d 584, 587 (D.C.1994). There is no

---

8. Indeed, in discussing the proposed reinstruction with counsel, the court said to defense counsel that even if it had originally instructed the jury on APO as a lesser included offense of APO while armed, counsel's

summation would not have been any different. "I'm not sure what you could have argued, frankly. There wasn't much left to argue; your own witness had him guilty of that" (*i.e.,* unarmed APO).

evidence in this case to suggest that Officers Waid and Andriani used excessive force. Both officers testified that they sprayed appellant with pepper spray because he failed to follow their verbal commands and strongly resisted being handcuffed, and that they arrested him only after determining that he was carrying a pistol. Both civilian witnesses testified that they called 911 because they feared for the safety of the police officers, and one of those witnesses, Ms. Sullivan, testified that the officers used what the prosecutor called "a limited amount of force" against appellant in an effort to subdue him. She did not see either officer punch or kick appellant, strike him with a baton, or even use pepper spray against him; she saw no physical force "other than just wrestling with him," in an effort to subdue him.[9] Because there was no other evidence from which the jury could find that the officers used excessive force against appellant,[10] we hold that the trial court committed no error in refusing to give an instruction on justifiable or excusable cause. *See Jones v. United States,* 512 A.2d 253, 259 n. 8 (D.C.1986).

## IV

The judgment of conviction is

*Affirmed.*

---

9. Ms. Sullivan, a registered nurse, was employed at D.C. General Hospital. Her duties there included dealing with drug users and methadone addicts. In the course of those duties, she sometimes was called upon to subdue an unruly patient. She testified, in response to the prosecutor's questions, that in her professional capacity she knew the difference between fighting and subduing, and that the force used by the officers was only what the prosecutor called "the limited amount of force" that was necessary "to control [a per-son] when [he doesn't] want to be controlled."

10. In his brief appellant cites "the possibility that the officers may have used more force than that to which they admitted during the time that neither non-police officer witness was looking" to support his argument that his requested instruction should have been given. Such a speculative "possibility," however, cannot serve as the basis for an instruction of any kind.