*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CF-107

CEDRICK LORENZO SHULER, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CF1-11664-11)

(Hon. William M. Jackson, Trial Judge)

(Submitted June 6, 2014                        Decided August 28, 2014)

*Thomas T. Heslep* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *David B. Goodhand*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and KING, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  Following a jury trial, appellant Cedrick Lorenzo Shuler was acquitted of the initial charge of first-degree murder while armed, D.C. Code §§ 22-2401, -3202 (1981) (current versions at D.C. Code §§ 22-2101, -4502 (2012 Repl.)), and convicted of the lesser included offense of

second-degree murder while armed, D.C. Code §§ 22-2403, -3202 (1981) (current versions at D.C. Code §§ 22-2103, -4502 (2012 Repl.)), for the February 22, 1998, fatal shooting of Renee Best. On appeal, appellant argues that the trial court committed reversible error by: (1) giving a supplemental instruction on second-degree murder for the first time during jury deliberations in response to a jury question; and (2) reinstructing the jury on premeditation and deliberation, transferred intent, and the obligation of the jury to acquit appellant of first-degree murder before considering second-degree.[1] We affirm.

---

[1] Appellant further contends that the trial court erred by failing to *sua sponte* address a "dangerously inappropriate" closing argument made by the prosecutor. Because an objection was never made at trial with regard to these allegedly inappropriate remarks, the plain error standard applies — a "stringent" standard that requires "a showing of . . . error so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *McGrier v. United States*, 597 A.2d 36, 41 (D.C. 1991) (citations and internal quotation marks omitted); *see also Hargrove v. United States*, 55 A.3d 852, 858 (D.C. 2012) (citing *McGrier*, *supra*, 597 A.2d at 41). Under this standard, "reversal of a conviction based on improper prosecutorial argument is appropriate only in a 'particularly egregious' case, when 'a miscarriage of justice would otherwise result.'" *Id.* (citation omitted). Viewing the record, appellant cannot meet the strictures of plain error review.

# I.     Factual Background

## A. *The 1998 Shooting*

On February 22, 1998, in an attempt to avenge the killing of a close friend, Hosea Stringfield, appellant Shuler asked his friend Alvin Barnes to "go with him to get," i.e., kill, the alleged perpetrator, Walter Jones. They found Jones speaking with Renee Best, an unrelated female, off the 4600 block of Hillside Road, Southeast, Washington, D.C. With appellant leading the way, they walked through an alley past bystanding eyewitness, Ricky Black. Upon approaching Jones and Best, appellant inexplicably first shot Best in the face, which ultimately led to her death. Although appellant also shot at Jones and managed to hit him in the leg, Jones ultimately escaped. Afterwards, Barnes questioned appellant about why he "shot the girl," to which appellant replied: "F*** it. It's over with."

### B. The Trial

Thirteen years later, on June 22, 2011, a grand jury returned an indictment charging appellant with first-degree murder while armed for the killing of Best.[2] The jury trial commenced on October 1, 2012. The government's case relied primarily on the eyewitness accounts of Barnes[3] and Black,[4] due to the age of the murder. At the close of the government's case, the trial court outlined its proposed jury instructions on first-degree murder, and neither party asked for an instruction on second-degree murder.

During closing arguments, defense counsel sought to attack the credibility of Barnes and Black. Specifically, to further emphasize the defense's theory at trial

---

[2] Because of the thirteen-year delay and the statute of limitations, the only charge that the government could bring was that of the homicide. In the same indictment, Jones was also charged with the alleged murder of Stringfield, but his case was eventually severed from appellant's.

[3] Law enforcement personnel approached Barnes, who was serving a sentence for a separate murder at the time, believing that he had witnessed Best's murder. After consulting with his lawyer, Barnes agreed to plead guilty to Best's murder and cooperate as a government witness.

[4] Back in 1998, Black gave a signed statement to police as to what he saw and identified a photograph of appellant as someone he saw coming through the alley. However, he did not hear anything more from the authorities until 2011, while serving an unrelated sixteen-year sentence in North Carolina.

that appellant was never at the scene of the crime, defense counsel insinuated that the eyewitness testimony of Barnes and Black placing appellant at the scene could not be trusted because Barnes and Black "[were] receiving a benefit" and testified "for compensation."

After closing arguments, the trial court proceeded to instruct the jury on the charge of first-degree murder while armed, with instructions on the two alternative theories of *mens rea* liability: (1) appellant intended to kill Best, or (2) the transfer of appellant's intention to kill Jones to Best under the principle of transferred intent.[5] The trial court additionally instructed the jury on the "beyond a reasonable doubt" standard and witness credibility.

---

[5] The trial court instructed the jury on the doctrine of transferred intent as follows:

> Transferred intent connects the mental state directed towards an intended victim with the actual harm caused to another victim. Accordingly, if the government proves beyond a reasonable doubt that the defendant fired a shot specifically intending to kill . . . Jones but instead actually killed . . . Best, an unintended victim, then by operation of law the defendant's intent to kill is also transferred from . . . Jones to . . . Best. This principle applies whether or not the intended victim is also killed, injured or harmed or whether or not the intended victim is even identified.

During jury deliberations, the jury submitted numerous questions regarding the charge and the applicable law. A few hours into deliberations,[6] the jury sent the court its first note, which included two questions about the possibility of considering a lesser included offense:

> Is there any chance that we could reach a verdict on a related, but lesser offense, or is the offense charged the only one we can decide?

> If we conclude that Mr. Shuler had intent to commit serious bodily injury (but we are not convinced that he had intent to kill), does that satisfy the elements of the crime?

Based on this note, the trial court stated that it was "inclined to give a lesser included of [second-degree murder] while armed" instruction as an answer to the jury's question, and inquired if either party objected. Defense counsel objected, stating that "had [he] known that the lesser included second degree [murder instruction] was going to be included, it is highly possible that [he] would have argued some of the facts in closing argument a little different[ly] or . . . added something." However, the government retorted: "Well, the theory of [the defense's] case was that Mr. Shuler wasn't there." The trial court agreed with the

---

[6] The record does not reveal precisely how long the jury had been deliberating before it posed its question regarding the lesser included offense, but we can safely conclude that the jury had been deliberating for no more than four hours by the time it sent the note.

government, noting that "the defendant's theory was that he wasn't even there and that he didn't do it," and that defense counsel, "on the issue of first degree premeditated murder[,] . . . didn't even argue the elements." The trial court was, therefore, unconvinced that an instruction on the "lesser included [offense] of second degree murder would have changed [appellant's] argument." With the government agreeing that "the [c]ourt is correct that it has the discretion" to give the instruction, the trial court instructed the jury that they could "go on to consider second degree murder while armed" as a lesser included offense "[i]f [they] find [appellant] not guilty of first degree . . . murder while armed."

The following day, the jury again communicated with the trial court, this time asking if it could "proceed to consider" second-degree murder if it had not yet reached a verdict on first-degree murder. The trial court responded, with the parties' agreement, by sending a note to ask whether the jurors "believe that they've made all reasonable efforts to reach a unanimous verdict" on first-degree murder. The jury did not immediately respond to this question. However, later that afternoon, the jury sent another note asking:

> We have a question about the meaning of the principle of transferred intent. If the shot that killed Renee Best was never intended to hit or kill [Jones], does transferred intent apply? The question concerns the possibility that

> Renee Best was shot on purpose but in an unpremeditated
> way.

While discussing with the parties about how to answer this question, the trial court noted: "The principles of transferred intent apply to both first degree . . . and second degree murder. . . . But I don't know where they are, quite frankly." Noting that the jury had yet to respond to the pending "reasonable efforts" question, and that the question specifically mentioned the "possibility that . . . Best was shot . . . in an *unpremeditated* way," the trial court and both parties became concerned that the jury had begun to consider second-degree murder without resolving first-degree. The trial court thus called the jury back into the courtroom to explain that it could not answer their question regarding transferred intent until they answered the earlier question regarding "reasonable efforts."

The next morning, the jury answered that "they were still in deliberations about first degree murder." However, the jury additionally informed the court that, because their "question about transferred intent [wa]s relevant" to their deliberations about first-degree murder, they have halted further deliberations to await the court's response to that question. At this point, the trial court believed that the jury was confused about the law because their transferred intent question, having specifically referenced the possibility that Best was shot "in an

unpremeditated way," "involved second-degree murder, which [the jury] should not . . . [consider] if they haven't resolved the issue of first-degree murder." While discussing the issue with the parties, the trial court emphasized that it "need[ed] to be careful" and avoid "steering [the jurors] one way or the other," and proposed that the "safest way of answering their question" was to "give them the instruction[s] again on premeditation and deliberation and on transferred intent."

Defense counsel "object[ed] to any instruction," arguing that any instruction would "steer the jury in a direction." The court disagreed, noting that it "ha[d] an obligation to be as helpful as [it] possibly can without . . . directing [the jurors] one way or the other," and reiterated that the "most neutral way . . . [to] respond is by giving them" the instructions again. In response, defense counsel stated that "if the [c]ourt's going to give the instruction . . . [he] would ask the [c]ourt to also . . . instruct the jury on reasonable doubt and credibility of the witnesses" in order to "balance those instructions." The trial court rejected defense counsel's proposal, noting that, because "[the jurors] haven't asked . . . anything about reasonable doubt" or "about credibility of witnesses," such an instruction would "inject[] something in there" rather than "balance anything out."

Accordingly, the judge reinstructed the jury on the elements of first-degree murder and second-degree murder, as well as their obligation to acquit on the first-degree charge before considering the second-degree charge, and clarified the theory of transferred intent. Approximately forty minutes later, the jury announced its guilty verdict on the lesser included offense of second-degree murder while armed. This appeal followed.

## II. Discussion

### A. *Second-Degree Murder Instruction*

"We review decisions on whether to reinstruct a jury for abuse of discretion." *Blocker v. United States*, 940 A.2d 1042, 1046 (D.C. 2008) (citations omitted). "[W]e have frequently recognized that the trial judge has considerable discretion in the matter of jury instructions[] and in responding to jurors' questions." *Yelverton v. United States*, 904 A.2d 383, 388 (D.C. 2006) (citations omitted). That said, a supplemental instruction in response to a specific request from a deliberating jury "must be viewed in a special light." *Id.* (citations and internal quotation marks omitted). This is because the instruction has the potential to "unduly emphasize one aspect of the case," *id.* (citation and internal quotation

marks omitted), and thereby "create a significant risk that the jury would apply the wrong standard," *Owens v. United States*, 90 A.3d 1118, 1123 (D.C. 2014) (citing *Yelverton*, *supra*, 904 A.2d at 388), or otherwise influence the jury's deliberations in a manner prejudicial to the defendant, *see United States v. Welbeck*, 145 F.3d 493, 497 (2d Cir. 1998) (concluding that instructions given "during deliberations" are "dangerous and will often cause reversible error" if the circumstances "give rise to unfair prejudice").

Usually, "a lesser-included offense instruction is properly given as long as (1) the lesser included offense consists of some, but not every element of the greater offense; and (2) the evidence is sufficient to support the lesser charge."[7] *Jennings v. United States*, 993 A.2d 1077, 1079 (D.C. 2010) (citation and internal quotation marks omitted). However, the circumstances under which the lesser included offense instruction was given in this case present an issue of first

---

[7] Appellant never opposed the lesser included offense instruction on the basis of insufficient evidence either at trial or on appeal. At any rate, this requirement "is a minimal one: it means any evidence . . . however weak." (*Anthony*) *Shuler v. United States*, 677 A.2d 1014, 1017 (D.C. 1996) (omission in original) (citation and quotation marks omitted). Here, as noted in *Woodard v. United States*, 738 A.2d 254, 261 (D.C. 1999), "the jury instruction . . . was not improper because a reasonable jury could have concluded that the government failed to establish premeditation, the only element distinguishing first from second-degree murder."

impression — which we review *de novo*, *Plummer v. United States*, 43 A.3d 260, 273 (D.C. 2012) — namely, whether it was reversible error for the trial court, in response to a jury question, to instruct the jury on a lesser included offense not requested by either party prior to closing arguments.[8] In considering this issue, we take guidance from a factually similar case from the Second Circuit.

In *Welbeck*, prior to closing arguments, the trial court instructed the jury on the elements of possession of a controlled substance with intent to distribute, and neither side requested a charge on simple possession as a lesser included offense. 145 F.3d at 495. During deliberations, however, the jury similarly sent two consecutive notes to the court, asking whether simple "possession" is a lesser charge and whether they could consider the lesser charge if they were stuck on the

---

[8] Although we previously addressed closely related issues, we have never squarely addressed whether the trial court has the discretion to give a supplemental instruction under these circumstances. For example, in *Bouknight v. United States*, 641 A.2d 857, 859 (D.C. 1994), we upheld a trial court's decision to give supplemental instructions to a jury during deliberations on "an alternative theory of criminal liability," as opposed to a "new charge." In *Blocker*, we further decided that the trial court did not abuse its discretion by withdrawing an erroneous charge and reinstructing the jury on a lesser included offense of that charge after deliberations had begun. 940 A.2d at 1046. This case is distinguishable from *Bouknight* because the supplemental instruction was on a "new charge," albeit a lesser included offense of the original charge. *Blocker* is also not on all fours because the trial court in this case was not acting to correct a prior erroneous charge. *See* 940 A.2d at 1048 (reasoning that, "more importantly, the original, erroneous instruction could not be allowed to stand uncorrected").

"distribution" element. *Id.* at 495–96. After discussing with both parties, the court, over defense counsel's objection, instructed the jurors that they could convict the appellant of simple possession if they were unable to reach a verdict on possession with intent to distribute. *Id.* On appeal, the Second Circuit upheld the conviction, explaining that, "while the delivery of a lesser included offense charge to a deliberating jury is dangerous and will often cause reversible error, it is not *per se* illegal and will not justify reversal if the circumstances do not give rise to unfair prejudice." *Id.* at 497.

The Second Circuit recognized that supplemental jury instructions on a lesser included charge issued "without notice to the defendant prior to summation" raise particular concerns, and thus concluded that such cases must be "carefully scrutinize[d]" according to "the facts and circumstances of each trial." *Id.* The court explicitly identified two potential problems that could give rise to unfair prejudice to the defendant: (1) where the "timing of the charge" makes it "unfairly suggestive on the court's part," or (2) where the "defendant has somehow been harmed by his reasonable expectation that he faces exposure to liability only for the greater offense charged." *Id.* at 497. The first problem arises if "the theory of lesser-included liability was suggested to a stalled jury on the court's own initiative," causing the "stalled jury [to] regard the newly furnished theory of

liability as the court's recommendation to resolve the impasse by agreeing to the lesser offense," *id.* (citations omitted), or, in other words, if the instructions would lead "a reasonable jury [to] believe that the trial court was now endorsing the new instructions," *Blocker*, *supra*, 940 A.2d at 1048 (internal quotation marks omitted) (quoting *State v. Thurmond*, 677 N.W.2d 655, 663 (Wis. App. Ct. 2004)). The second problem arises "where the supplemental instruction deprives the defendant of the opportunity to address effectively in summation the offense on which he is ultimately convicted," or "where the defendant makes strategic concessions in summation which are damaging in relation to the later charged lesser included offense." *Welbeck*, *supra*, 145 F.3d at 497. The Second Circuit found that neither of these concerns arose in *Welbeck* because, with regard to the first concern, the "initiative for the supplemental instruction came from the jury itself," which "preclud[es] the possibility that the timing of the charge was unfairly suggestive on the court's part," and, with regard to the second concern, there is not "any indication that [the appellant] was unfairly prejudiced by the late instruction." *Id.*

We find the logic expounded in *Welbeck* persuasive — especially considering that it is well-established in this jurisdiction that on issues relating to post-summation supplemental jury instructions, a "reversal is not required [if] appellant did not suffer any real prejudice," *Blocker*, *supra*, 940 A.2d at 1046. We

therefore adopt the Second Circuit's analysis in the District of Columbia.[9] The holding in *Welbeck* is particularly applicable here because that case dealt with facts substantially similar to those in this case. Accordingly, we likewise conclude that, in circumstances such as these, "we will not upset a conviction absent some indication of prejudice in consequence of the late charge." *Welbeck*, *supra*, 145 F.3d at 498. We are confident that none of the concerns discussed in *Welbeck* are present here.

Regarding the first potential concern, i.e., where the timing of the instruction renders it unduly suggestive, because the trial court gave the instruction on the lesser included offense as a response to a question asked by the jury early on during the deliberation process, there is no real danger of the jury assigning undue weight to the instruction or misinterpreting it as the court's recommendation for a compromise. *See id.* at 497 ("That concern is not present where, as here, it was the jury that raised the question of a lesser included offense in a note to the court."). The jury had just begun deliberations, foreclosing the possibility that the "verdict

---

[9] The *Welbeck* approach, or a similar analysis, has also been applied in a few other jurisdictions. *See, e.g.*, *Cheely v. State*, 850 P.2d 653, 662–63 (Alaska Ct. App. 1993) (affirming conviction on a later-charged lesser included offense because of an "absence of justifiable, detrimental reliance" by the defendant on the original instruction); *Thurmond*, *supra*, 677 N.W.2d at 656 (reversing the conviction upon finding that the post-summation jury instructions on lesser included offenses were unfairly prejudicial).

was driven by a stalled jury's desire to disband rather than complete a fair assessment of the evidence." *Thurmond*, *supra*, 677 N.W.2d at 663. Moreover, the trial court, while giving the second-degree murder instruction, repeated its instruction on first-degree murder and explained that, the newly-given lesser included charge notwithstanding, the jury must "first consider whether the defendant is guilty of first degree premeditated murder while armed." Thus the trial court was careful not to place any improper emphasis on the new charge or act in a manner so as to cause "a reasonable jury [to] believe that the trial court was now endorsing the new instructions." *Blocker*, *supra*, 940 A.2d at 1048 (citation and internal quotation marks omitted).

The second concern outlined in *Welbeck* — regarding whether the late instruction deprives appellant of the opportunity to address the charge effectively, or damages the argument appellant did make, during closing arguments — is also not present here. Although appellant objected below that he would have argued differently during closing argument had he known that an instruction on second-degree murder would be given, we do not find this argument persuasive. As the trial court noted, "defendant's theory was that he wasn't even there and that he didn't do it," and defense counsel did not present arguments regarding the elements of first-degree murder. A review of the record supports the trial court's

observations. Appellant's theory of defense did not depend on the difference between the elements of first-degree and second-degree murder. It instead depended on appellant's numerous arguments regarding and extensive challenges to the lack of credibility of the prosecution's key witnesses, whose testimonies implicated appellant and placed appellant at the scene of the crime. These arguments addressed the second-degree charge just as effectively as the first-degree. Thus, in light of the theory that appellant argued throughout trial and during closing argument — that he was not present at the scene of the crime — the instruction did not deprive appellant of the opportunity to address the offense of which he was ultimately convicted, or damage any arguments that appellant made during closing argument.[10] Consequently, although post-summation instructions on a lesser included offense are "disfavored" and have the potential for unfair prejudice, we conclude that, under the circumstances of this case, "[t]here was no unfair prejudice here, and therefore no error." *Welbeck*, *supra*, 145 F.3d at 498.

Lastly, appellant claims prejudice because the trial court's supplemental instruction undermined the "considered strategy by both sides" to pursue the case

---

[10] Appellant also complained on appeal that "no re-argument was allowed" after the trial court decided to give the supplemental instruction. However, because there was no request to reopen summations, appellant "cannot complain that he was deprived of the opportunity." *Welbeck*, *supra*, 145 F.3d at 496.

on an "all or nothing" basis. This argument is also without merit. While "the decision whether to request consideration of a lesser-included offense may be a tactical one for the parties, parties do not have unfettered unilateral rights in this regard." *Mungo v. United States*, 772 A.2d 240, 243–44 (D.C. 2001) (citation omitted). Although a trial court should generally "refrain from instructing a jury on a lesser-included offense without a request from a party to do so," *Mungo*, *supra*, 772 A.2d at 243 (citing *Woodard v. United States*, 738 A.2d 254, 258 n.9 (D.C. 1999)), a "trial court's *sua sponte* suggestion of a lesser-included offense instruction is not error simply because the trial court acts of its own accord," *High v. United States*, 972 A.2d 829, 833 (D.C. 2009). We clarified:

> [A] trial court is under no duty to sit quietly and refrain from even mentioning a lesser included instruction until one of the parties requests it (assuming that one is warranted under the circumstances). Rather, the court may give a lesser included instruction if requested to do so *or* if the prosecutor or defense counsel *"affirmatively agrees"* to one when the court suggests it.

*Hawthorne v. United States*, 829 A.2d 948, 952 (D.C. 2003) (second emphasis added) (citation omitted). *Hawthorne* explained that "[a]lthough the prosecutor . . . did not initiate the discussion about the possibility of a lesser included offense instruction," the trial court may nonetheless give the instruction *sua sponte*, because one of the parties, the prosecutor in that case, "affirmatively agreed" with

the trial court's suggestion by stating that such an instruction "certainly seems appropriate[,] unless the court thinks otherwise." Likewise, here, although neither appellant nor the government initially requested a lesser included instruction on second-degree murder, one of the parties — the government in this case — later agreed to the trial court's suggestion to give the instruction in response to the jury note, noting that "the [c]ourt is correct that it has the discretion" to give the lesser included instruction. *Woodard*, *supra* note 7, 738 A.2d at 260. It is of no consequence that the trial court gave the instruction over defense counsel's objection, because, in situations where one of the parties agrees to the lesser included instruction but the other objects, "[t]he test is not whether there is an objection from either party, but whether the evidence supports the giving of the instruction," *Glymph v. United States*, 490 A.2d 1157, 1160 (D.C. 1985), and, as discussed *supra* note 7, there clearly was sufficient evidence to support an instruction on second-degree murder in this case. Consequently, the trial court's decision to give the instruction was not an abuse of discretion simply "because it precluded [appellant] from taking the 'all or nothing' approach."

For these reasons, the trial court did not abuse its discretion by giving this lesser included instruction in response to the jury question because appellant did

not suffer "real prejudice," *Blocker*, *supra*, 940 A.2d at 1046, "in consequence of the [post-summation] charge," *Welbeck*, *supra*, 145 F.3d at 497.

## B. The Final Reinstruction

Additionally, appellant contends that the trial court abused its discretion by giving a final reinstruction to the jury on certain legal standards and principles over the defense's objection, and by rejecting defense counsel's proposal to "balance" the trial court's reinstruction with reinstructions on reasonable doubt and credibility of witnesses. We discern no such abuse of discretion. *See Blocker*, *supra*, 940 A.2d at 1046. It is well-established "that when a jury sends a note indicating its confusion with the law governing its deliberations, the trial court *must not allow that confusion to persist*; it must respond appropriately." *Jordan v. United States*, 18 A.3d 703, 707 (D.C. 2011) (emphasis added) (citation and internal quotation marks omitted). "This means that when a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Cox v. United States*, 999 A.2d 63, 71 (D.C. 2010) (citation, brackets, and internal quotation marks omitted). The jury note in this case — asking about transferred intent in the context of the "possibility" that Best was killed "in an unpremeditated manner" but also maintaining that the question "[wa]s relevant" to their

deliberations about first-degree murder — "clearly evinced confusion," *id.*, as to first-degree murder, second-degree murder, and transferred intent. Accordingly, the trial court did not abuse its discretion by reinstructing the jury on those legal issues.

Further, because the trial court's reinstructions were simply a neutral recitation of the law intended to dispel the jury's confusion, the trial court's instructions were balanced and did not inject the trial court into the jury's deliberations on how the law should have been applied. *See Davis v. United States*, 510 A.2d 1051, 1053 (D.C. 1986) (holding that "the trial judge must prevent the poison[ing of] an otherwise healthy trial" by avoiding giving "improperly balanced" instructions) (alteration in original) (citation and internal quotation marks omitted). A reinstruction is balanced where, "by answering only the question that was asked . . . , the judge refrained from emphasizing the government's case in a prejudicial manner." *Robinson v. United States*, 642 A.2d 1306, 1311–12 (D.C. 1994). Thus, by simply recounting the elements of the offenses and the definition of transferred intent, the trial court limited the reinstruction to only addressing the jury's areas of confusion. Moreover, the record reveals that the trial court was conscious of its obligation to give a helpful reinstruction "without steering [the jurors] one way or the other." Contrary to

appellant's claim, the trial court further did not err by rejecting defense counsel's proposal for additional reinstructions on reasonable doubt and credibility of witnesses. As the trial court observed, these reinstructions had nothing to do with the jury's questions and would have resulted in the trial court "injecting" itself into an issue the jury did not ask about. Accordingly, the trial court did not abuse its discretion by reinstructing the jury on the law under these circumstances.

### III.    Conclusion

We discern no abuse of discretion with regard to either the post-summation instruction on second-degree murder or the trial court's reinstructions. Although post-summation instructions on a lesser included offense have the potential for unfair prejudice, we conclude on appeal that "[t]here was no unfair prejudice here, and therefore no error." *Welbeck*, *supra*, 145 F.3d at 498. The conviction on appeal is hereby

*Affirmed.*